A. R. HUME, Administrator, *v.* ALEX. WARTERS, *et al.*

GUARDIAN AND WARD. Pension money received by guardian is for
support and maintenance of ward, and when received the guardian
must show that he has faithfully applied it to the purposes for which
it was designed. A liberal policy may be applied in such cases
where the court can see that the fund has been actually appropriated
to and received by the ward, but if otherwise appropriated the
guardian must respond to the extent he fails to show a proper ap-
plication of the fund.                          •

FROM KNOX.

Appeal from the Chancery Court at Knoxville.    W.
B. STALEY, Ch.

BAXTER & GREENE for complainant.

CORNICK & CORNICK for defendants.

FREEMAN, J., delivered the opinion of the court.

The bill in this case is by the administrator of
George N. Simpson, deceased, against the guardian of
his intestate and his sureties, for an account of money
received by him during his guardianship.

The defendant, Alexander Warters, was appointed
guardian of this and another ward in September, 1875,
for the purpose of receiving a pension fund from the
Government of the United States, they having no other
estate.    The two children were at this time entitled
to receive $12 per month from the Federal Treasury.
In December, 1875, the elder arrived at 16 years of
age, and under the law of the United States ceased

to be entitled to any thing.    From this time on until the death of the present intestate the guardian received $10 per month for his ward, George N. Simpson, and admits himself chargeable with this sum up to his death in January, 1881.    He claims he has properly disbursed this fund for the support and maintenance of this ward.    The question presented for decision is the truth of this contention.

The chancellor, on report made by the clerk and master, allowed the guardian a credit of $6 per month for expenditures, under the proof in the case, which left a balance against the guardian of $284.15, for which a decree was rendered. and appeal by the complainant. A writ of error is prosecuted by defendant.

The Referees report in favor of reversing the decree of the chancellor, holding the guardian has satisfactorily accounted for the entire fund.    The exceptions to this report on the part of the complainant open the whole case for decision.

The facts are, that the ward lived with his mother, a colored woman, in the city of Knoxville, she having a small home with three or four other children.    She was poor, had no income except such as she received from washing.

The guardian tenders an account of over $700, and shows that he furnished all the articles therein charged during the years of his guardianship to the mother of his ward, except the sum of $69.70, the items of which sum are shown to have been specifically for the son, and were proper for his use.    Much of the other part of the account, in fact nearly all

would be appropriate for the mother in housekeeping, and in supplies for her family, but would not be appropriate for a young boy—such as prints, a sewing machine, large quantities of soap, provisions and the like articles. The greater portion of all this was furnished by the firm of Warters & Bro., of which the respondent guardian was a member. In fact it clearly appears that the guardian simply allowed the mother, as one of the partners swears, and we believe defendant also, to take up the amount of the pension money in the store, and use it for the support of herself and family, including the ward, and then says, he intended it to go for the support and maintenance of his ward. No special contract for the support and maintenance of the ward is shown, nor do we think any was made. The mother simply supported her son, fed and clothed him as she did the other children, and received the pension money, or rather supplies, and sometimes small sums of money from the guardian, absorbing the pension. This money she expended as she pleased in support of herself and family, the guardian giving no attention to it whatever, was perhaps only careful that she should not take up more than the sum to be received from the pension, it being generally all taken up before the money was received. The fund was thus managed up to the death of the ward, the guardian never settling his account with the county court, or in any way looking after the fund or accounting for it, except by charging his ward with the amount furnished the mother, for which he now claims a credit, absorbing the whole fund.

This being a pension fund we are relieved from the question of propriety of the guardian trenching on the *corpus* of the fund, as we have several times held the purpose of such pensions was the support and maintenance of the ward up to the age at which it ceases, to-wit, sixteen years.

But when it is shown the guardian has received the fund, he has thereby charged himself with it, and nothing in the law, or purpose for which such money is given by the government relieves the guardian from showing that he has faithfully applied the fund to the purposes for which it was designed, that is to the support and maintenance of the ward according to his circumstances and position in life, as far as the fund will enable him to do so. A somewhat liberal policy may be applied to such a case, where the court can see the fund has actually been appropriated to and received by the ward in such cases, but still it must be shown reasonably by proof, that the fund has gone to the use of the ward, and if otherwise applied, the guardian must respond to the extent he fails to show a proper application of the fund.

With these principles in view what is the result of the facts in this case? It does clearly appear that $69.70 has gone specifically to the use of the ward. It also appears that the balance was paid to the mother, and by her used in support of herself and family, including the ward, aided by such means as she was able to earn by washing, and for a part of two years, the labor of her son, the ward. This last sum was small, but need not be noticed in this case,

as the mother was entitled to the service of her son and proceeds of his labor, and no service was rendered to the guardian by the ward.

It appears with reasonable certainty in this way that the ward, through the mother, did get the benefit of his proportion of the fund used for the support of the family—probably something more in the way of better clothing. But it does not appear that he got more after the sister ceased to be a beneficiary than he did before, and then they were both supported on $12 per month. In view of this the clerk and master reported $6 per month as a proper credit, and the chancellor decreed on this basis, less $72 compensation allowed by him to the guardian.

The only additional proof introduced to sustain the propriety of this expenditure as claimed, is the statement of witnesses in general terms, that it would be worth from $10 to $15 to support this boy. We have repeatedly said this kind of evidence is of no value in such a case, but that the actual items of expenditure made out by reasonable proof, or vouchers showing the payments is the only safe rule.

We conclude on the whole case, the clerk and master and chancellor have about reached the correct conclusion as to the amount properly expended for the ward, and so decree, affirming in this the decree below with simple interest as to compensation.

It clearly appears the guardian was guilty of continued breach of legal duty by failing to settle annually as required by Code, section 2495, or to renew his bond, and was liable and ought to have been re-

moved from office as 'required by section 2500 of the Code. The goods furnished to the mother were sold by the firm of which the guardian was a member and charged to the ward, and there is nothing to show the price was reasonable. We suspect the profit was large. In view of these facts the question is whether he is entitled to compensation at all?

The order found in the record of the county court authorizing the guardian to use the fund for support of his ward, is of no service to him, as the county court had no authority to make any such order, and he was authorized to use it properly for his ward without such order.

In view of these gross derelictions of duty as plainly required by law, we hold the guardian should not be allowed any thing for compensation. A trustee who undertakes a trust should not be compensated where such gross failure to perform the duties imposed by law is found as we find in this case.

The chancellor's decree will be modified as indicated, the report of the Referees set aside, and the costs of the case be paid by defendants.